UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| SCOOTER G. MAHONEY, | ) | NO.   CV-09-0198-LRS |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| -vs- | ) | |
| | ) | |
| DELTA AIRLINES, INC., and AETNA | ) | |
| LIFE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

BEFORE THE COURT is Defendants' Motion For Summary Judgment (ECF No. 78).  A hearing was held in Yakima on December 8, 2011.  Maris Baltins participated on behalf of the Plaintiff; Nancy Anderson participated on behalf of Defendants.

I.   **BACKGROUND FACTS**

Plaintiff Scooter G. Mahoney commenced employment with Delta Air Lines("Delta") on June 3, 1968 as a Flight Attendant. As a Delta employee, Plaintiff was a participant in and beneficiary of a group insurance disability policy ("MLTD Plan") subject to the rules and Regulations of the Employee Retirement Income Security Act of 1974 ("ERISA"). Under the MLTD Plan, Delta Air Lines was the Plan Administrator, while Aetna Life Insurance Company ("Aetna") was designated a fiduciary, whose responsibilities included determining

ORDER - 1

whether beneficiaries were eligible for benefits.

The MLTD Plan is what is commonly referred to as an "own occupation/any occupation" disability plan. To paraphrase the Plan's language: for the first 12 months after a claimant becomes disabled (i.e., after a 6 month waiting period and the first six months that benefits are payable), the claimant will be "deemed disabled" for purposes of receiving benefits under the Plan if: (1) the claimant is not able to perform the material duties of his or her own occupation and (2) the claimant's earnings from any job performed are 80% or less of the claimant's adjusted predisability earnings.

On June 29, 2004, Plaintiff was assaulted while on duty as a Flight Attendant and suffered a debilitating injury which rendered her unable to continue working as a Flight Attendant. Commencing January 14, 2005, Plaintiff received monthly benefits under the MLTD Plan of $100, the minimum amount, combined with Worker's Compensation payments of $1,802.67. On March 20, 2006, Jacqueline G. Barley, an Aetna claim analyst, sent a letter to Plaintiff which provided that effective December 1, 2005, Aetna would be paying MLTD benefits of $1,200 per month from December 1, 2005 through September 30, 2012, triggering a 6 month elimination period under the MLTD Plan.  ECF No. 81-2, Exh. B.

Upon completion of the elimination period, Plaintiff was subject to a "reasonable occupation" standard under the MLTD Plan, under which her continued eligibility to receive MLTD benefits depended on whether she was able to continue work in any "reasonable occupation."  On February 22 and 23, 2006, Aetna had Plaintiff participate in a Functional Capacity Evaluation which concluded that Plaintiff could accept employment in a

full-time position involving "Light-Medium" physical demands. Aetna next contacted Concentra Integrated Services ("Concentra") to conduct a labor market survey of positions within 50 miles of Spokane which would satisfy the "reasonable occupation" eligibility standard of the MLTD Plan. Aetna told Concentra to apply an hourly wage of $8.30 in identifying any "reasonable occupation." Using the $8.30 hourly wage, Concentra identified positions, including restaurant hostess, as alternative occupations which Aetna used to satisfy the "reasonable occupation" standard and deny MLTD benefits to Plaintiff.

On June 29, 2006, Barbara Musgrave, Aetna Disability Case Manger, contacted Plaintiff by telephone and advised her that her eligibility to receive further MLTD benefits was terminated, explaining that the hourly wage rate of $8.30, represented 60% of Plaintiff's "LTD benefits." Aetna states it sent a letter terminating Plaintiff's MLTD benefits on July 3, 2006, but Plaintiff states she never received the letter.

Plaintiff disagrees with this hourly wage rate, arguing that as a Flight Attendant, her rate of pay, including base and flight pay, and given her years of service at Delta, was $60.31 per hour.

On February 15, 2011, this Court ordered Defendants to cooperate in the production of documents, which refer or relate to the calculation of $8.30 per hour as a "reasonable wage" in assessing whether Plaintiff could obtain a "reasonable occupation" and documents which refer or relate to Plaintiff's payroll records from 2001 through 2006. The Court also ordered that Defendants identify those persons who made the wage calculations and are capable of explaining the method of calculation and reasons for the wage rate which was utilized. (ECF No. 55).

On June 21, 2011, pursuant to the Court's Order, Plaintiff took the depositions of Kathleen Dixon, Letitia Gallman, and Phillip Syphers, all designated by Delta as its Fed. R. Civ. P. 30(b)(6) representatives. (ECF No. 88).

**II.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**A. Defendants' Argument**

Defendants assert this ERISA action is subject to review under the abuse of discretion standard and move to dismiss Plaintiff's claims for benefits and damages under ERISA, 29 U.S.C. §§ 1132(a)(1)(B), 1132(c)(1)(B). Defendants argue Aetna did not abuse its discretion when it denied Plaintiff's long-term disability claim. Defendants further argue that Aetna's denial is supported by substantial evidence in the record and is not "so patently arbitrary and unreasonable as to lack foundation in factual basis." *See Hensley v. Northwest Permanente P.C. Retirement Plan & Trust*, 258 F.3d 986, 1001 (9th Cir. 2001).

There is no dispute that Plaintiff's total earnings for the year July 1, 2002 through June 30, 2003 was $28,800. This amount is considered "pensionable earnings" and divided by 12 months, equaling $2,400, which amount is considered the Monthly Rate of Basic Earnings ("MRBE"). Then, using the percentage of predisability earnings or 60%, of $2400, results in $8.30 per hour as the regular rate of pay that will result in earnings of $2400 a month in a full time job of 40 hours/week. (ECF No. 81, at 6).

As noted above, the Functional Capacity Evaluation on Plaintiff resulted in a finding that Plaintiff could work full-time, eight hours per day, five days per week in a "light-medium" work category job. Based

on that assessment, Aetna conducted a transitional skills assessment to determine the types of jobs for which Plaintiff would be qualified based on her education, training, and experience.  Additionally, a Labor Market Survey was performed to determine if any jobs existed in Ms. Mahoney's labor market that fit her functional capacity for "light medium" work and that otherwise met the definition of a "reasonable occupation" under the Plan – that is, a job that Ms. Mahoney was, or could become, fit to perform through education, training or experience and that could be expected to earn her at least 60% of her monthly earnings at Delta prior to becoming disabled.

The Labor Market Survey identified several jobs meeting these requirements, including teaching jobs, which paid yearly salaries of almost 100% of Plaintiff's predisability earnings as determined by Aetna: $28,000 to $30,000.  While Plaintiff did not have a current teaching certificate, she had previously had a certificate, and Aetna determined that it could be renewed by application.  Aetna concluded that Plaintiff would be able to replace at least 60% of her predisability earnings by working at "any occupation" under the Plan's terms.

Based on this objective evidence, Aetna determined that Ms. Mahoney was no longer "disabled" as defined in the Plan and was, therefore, no longer eligible to continue receiving long term disability benefits under the more stringent "any occupation" standard.  Aetna informed Ms. Mahoney of its decision in a phone call on June 30, 2006, and in a letter dated July 3, 2006, which Plaintiff claims she never received.  Although Ms. Mahoney contends that she never received the letter, she acknowledged receiving the phone call notice and was aware that her MLTD benefit was

1  denied. Ms. Mahoney did not file any written appeal of the claim denial

2  with Aetna. This lawsuit followed nearly three years later.

3  **B. Plaintiff's Claims**

4  Plaintiff asserts the methodology employed by Aetna to calculate her

5  $8.30 hourly wage was one which operated to benefit Aetna, as the funding

6  source of the Delta Plan and to the detriment of not only Mrs. Mahoney,

7  but also every other Flight Attendant who may have applied for MLTD

8  benefits under the Delta plan.  Plaintiff argues that Defendants rely on

9  a significant amount of documents outside of the administrative record

10  and that the Rule 30(b)(6) deponents could not explain how or why the

11  $8.30 figure was used for this situation of flight attendants who make

12  considerably more than the $8.30 per hour.

13  Plaintiff urges that a genuine issue of material fact exists with

14  respect to whether Mrs. Mahoney failed to exhaust her administrative

15  remedies.  As noted, Mrs. Mahoney contends that she never received

16  Aetna's letter of July 3, 2006 denying her claim for MLTD benefits.

17  Plaintiff further argues that any effort by Mrs. Mahoney to appeal

18  the denial in November of 2009 would have been rejected as outside of the

19  appeal deadline. For defendants to now suggest otherwise is unreasonable.

20  Finally, Plaintiff argues that Defendants' arguments simply ignore

21  29 CFR § 2560.503-1(g) imposing upon Aetna, as the fiduciary, the duty

22  to provide to Mrs. Mahoney a written notice of the denial of her claim

23  for MLTD benefits.  This regulation reads, in pertinent part:

24          Manner and content of notification of benefit
            determination. (1) Except as provided in paragraph
25          (g)(2) of this section, the plan administrator shall
            provide a claimant with written or electronic
26          notification of any adverse benefit determination. . .
            The notification shall set forth, in a manner

calculated to be understood by the claimant --
(i) The specific reason or reasons for the
adverse determination;
(ii) Reference to the specific plan
provisions on which the determination is based;
(iii) A description of any additional
material or information necessary for the claimant to
perfect the claim and an explanation of why such
material or information is necessary;
(iv) A description of the plan's review
procedures and the time limits applicable to such
procedures, including a statement of the claimant's
right to bring a civil action under section 502(a) of
the Act following an adverse benefit determination on
review;
* * *

29 CFR § 2560.503-1(g)

## C. Defendants' Reply

Defendants reply that regardless of whether Plaintiff received the July 3rd denial letter, Plaintiff does not dispute that Aetna called her on the phone and advised her that her benefit claim was being denied. While Plaintiff claims that there is nothing in the administrative record to show that she received notice of her appeal rights, Plaintiff is incorrect. Defendants state the record indicates "EE [employee] has been advised on this denial and appeal rights." (ECF No. 81-10, at AETNA 00455). Further, Plaintiff does not dispute that she received the first benefit letter, which also set out her ERISA appeal rights, and which provided contact information for appealing any benefit decision. (ECF No. 81-2, at AETNA 00486). Defendants argue Plaintiff certainly knew from the phone call of June 29, 2006 (ECF No. 81-10, at AETNA 00457) that her benefits were being denied, and received no benefit checks after that date. She had the information on how to appeal, yet took no action for three years, before filing this lawsuit.

As to Plaintiff's argument that Aetna's benefit decision was

ORDER - 7

unreasonable because Plaintiff did not work 40 hours a week and that her hourly rate of pay was $42.98 or $60.31, Defendants reply that Plaintiff misunderstands and misrepresents the "reasonable rate" issue. Defendants urge that the reasonable rate of $8.30 is based on a 40-hour full time "any reasonable occupation" position that will replace Plaintiff's monthly income – it is not based on Plaintiff's hourly rate or work hours at Delta, which are irrelevant.

Defendants conclude that the Plan looks only at whether Ms. Mahoney can replace her monthly earnings. To do that, the Plan looks at whether Plaintiff can work full time at any reasonable occupation to replace those monthly earnings. It does not require Aetna to calculate her replacement income based on her Delta hourly rate of pay. To the contrary, the Plan looks at whether Plaintiff can work at any reasonable full time occupation that will result in her earning 60% of her predisability monthly income.  Nor does the Plan require Aetna to determine whether she can replace her monthly earnings based only on a job that pays her at her Delta regular rate of pay. That would be a significant limitation, Defendants argue, which is not set forth anywhere in the Plan.

In sum, Defendants assert the only relevant question under the Plan is what her monthly earnings were ($2400, which is undisputed), and whether she could replace those monthly earnings by working full time at any reasonable occupation. The $8.30 hourly rate arises from the calculation of what rate of pay at any reasonable occupation – at other jobs – will result in her earning 60% of her monthly earnings of $2400. $8.30 per hour is the regular rate of pay that will result in earning 60%

1  of $2400 a month in a full time job.

2  **III. ANALYSIS**

3      In the Ninth Circuit where an insurer has a conflict of interest
4  which arises out of serving in the dual roles as administrator and
5  funding source for the plan, judicial review of such a decision is still
6  for abuse of discretion, but is "less deferential." *Regula v. Delta*
7  *Family-Care Disability Survivorship Plan*, 266 F.3d 1130, 1145 (9th
8  Cir.2001).  The standard in this case remains abuse of discretion, with
9  an alleged conflict of interest and the additional factors used in
10  assessing that conflict, being weighed along with other evidence in the
11  administrative record to decide whether the administrator abused its
12  discretion. *See Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623,
13  631 (9th Cir.2009); *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d
14  955, 965 (9th Cir. 2006).

15      A reviewing court may overturn the administrator's decision only if
16  it is "so patently arbitrary and unreasonable as to lack foundation in
17  factual basis." *Hensley v. Northwest Permanente P.C. Retirement Plan &*
18  *Trust*, 258 F.3d 986, 1001 (9th Cir.2001) (internal citations omitted).
19  Therefore, a plan administrator's discretionary decision may not be
20  overturned in the presence of relevant evidence, which reasonable minds
21  might accept as adequate to support a conclusion, even if two
22  inconsistent conclusions may be drawn from the evidence. *See Taft v.*
23  *Equitable Life Assur. Soc.*, 9 F.3d 1469, 1473 (9th Cir. 1993)("[i]n the
24  ERISA context, even decisions directly contrary to evidence in the record
25  do not necessarily amount to an abuse of discretion"). Furthermore, the
26  court may only consider the record before the administrator at the time

the decision was made in determining whether the decision was arbitrary and capricious. *Taft*, 9 F.3d at 1472.  In this case, however, the Court ordered supplementation of the Administrative Record.  Therefore, consideration of the supplemental record is appropriate under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955, 970-73 (9th Cir. 2006). Thus, this Court considers the evidence submitted by the parties as appropriate and proper.

The Court having considered the oral and written argument of counsel, finds that Defendant Aetna did not abuse its discretion. Aetna's denial of Plaintiff's claim was reasonable in light of the Plan language and the evidence in her file, which do not support continued disability under the MLTD Plan.

Specifically, the Plan provides in relevant part:

> A period of disability will be certified by Aetna if, and only for as long as, Aetna determines that you are disabled as a direct result of a significant change in your physical or mental condition occurring while you are covered under this Plan [and] under the regular care of a physician.
> From the date that you first become disabled and until Monthly Benefits are payable for 6 months, you will be deemed to be disabled on any day if:
> - You are not able to perform the material duties of your own occupation solely because of disease or injury; and
> - Your earnings from any job performed are 80% or less of your adjusted predisability earnings.

ECF No. 81-1, at 4.

After the 12 months have concluded, in order to continue receiving benefits, the claimant must then qualify as disabled under a more demanding standard, the so-called "any reasonable occupation" eligibility test. ECF No. 81, at 4.  The Plan provides in relevant part:

ORDER - 10

> After the first 6 months that any Monthly Benefit is payable during a certified period of disability, you will be deemed disabled on any day if you are not able to work at any reasonable occupation solely because of:
> - disease; or
> - injury.

ECF No. 81, at 4-5.

The Delta Plan defines "Reasonable Occupation" as:

> Any gainful activity for which you are, or may reasonably become, fitted by education, training, or experience; and which results in; or can be expected to result in; an income of more than 60% of your adjusted predisability earnings.

ECF No. 80, at 5.

Plaintiff suffered an on-the-job injury when she was assaulted by a passenger on June 29, 2004. After the required six-month waiting period, Plaintiff applied for disability benefits under the Plan. Aetna approved Plaintiff's application for benefits on January 14, 2005, finding that Plaintiff met the "own occupation" definition of disability in the Plan. Plaintiff began receiving long-term disability benefits effective December 29, 2004. The eligibility letter also notified Plaintiff that after she had received benefits for six months, "if you are still disabled from your own occupation and eligible for disability benefits on June 29, 2005, your plan requires that you meet a more strict 'any occupation' definition of disability. To qualify for monthly benefits, you must provide objective medical evidence that you are unable to perform any reasonable occupation for which you are qualified or could become qualified as a result of your education, training or experience." ECF No. 80, at 5-6.

The benefit approval letter noted that Plaintiff's computation of Monthly Benefit was based on 50 percent of her monthly earnings of

$2,400, or $1,200. Specifically, the letter states that the total amount from all applicable sources will not be less than 50.00 percent of "your Monthly Rate of Basic Earnings (MRBE) of $2,400.00." Id. The information relayed by Delta directly to Aetna (Aetna's online disability claim management system) is based on monthly and yearly pensionable earnings, not the employee's hourly rate of pay, such as the flight pay hourly rate. Id. at 6-7. Delta provided to Aetna information that Ms. Mahoney had total yearly earnings of $28,800 from July 2002 through June 2003, which is undisputed. ECF No. 81-4, Exh. D.

At the hearing, counsel for Defendants explained that Exhibit D (ECF No. 81-4) was evidence that Aetna used the predisability earnings time period from July 2002 through June 2003 because Plaintiff had significant time off in 2004 (the immediate predisability year). Thus, using the $28,800 figure was actually in the Plaintiff's favor.

Plaintiff was not injured until June 29, 2004, her last day of work. Had Plaintiff's earnings during the immediate year of predisability been greater than the undisputed amount of $28,800, her monthly earnings used for determining her disability eligibility would have been greater than $2,400. This was not the case, however, and it was not unreasonable or arbitrary and capricious to calculate her monthly rate of basic earnings based on the year of predisability from July 2002 through June 2003. The Plan language does not require a different result. Neither should the Court substitute its view of "reasonable" for that of Aetna where the decision which was made meets the basic legal requirements imposed by law.

Given the disposition of the merits herein, the Court need not

1  address Defendants' argument concerning Plaintiff's alleged failure to

2  exhaust her administrative remedies for this claim.  The Court notes that

3  the evidence in this case indicates that Plaintiff had reason to know and

4  did know of Aetna's denial of her benefits at least 3 years before she

5  filed this lawsuit.[1]   The Court also finds that although Plaintiff's

6  argument that Aetna failed to provide notice under the regulations is a

7  question of fact, the argument is unavailing given the disposition of the

8  merits herein.

9       Accordingly,

10      **IT IS ORDERED** that:  Defendants' Motion for Summary Judgment, **ECF**

11  **No. 78**, is **GRANTED**.

12      **IT IS SO ORDERED.**

13      The District Court Executive is directed to file this Order, provide

14  copies to counsel, enter judgment consistent with this order, and **CLOSE**

15  **FILE**.

16      **DATED** this 6th day of January, 2012.

17

18                              s/ *Lonny R. Suko*

19                         _____
                                   LONNY R. SUKO
20                         UNITED STATES DISTRICT JUDGE

21

22

23

24

25
    _____
26  [1]Although the Court is cognizant of a bar for claim of benefits by
    ERISA's statute of limitations under 29 U.S.C. § 1132(a)(1)(B), neither
    party argued that this case was barred by the statute of limitations
    because Plaintiff never appealed.

ORDER - 13